We'll hear the next case, Flores v. Barr. May it please the Court, Ned Hirschfeld for Petitioner Edson Flores. Our briefs raise both jurisdictional and procedural challenges to the Board's order here. Now, in light of Banning v. Gomez, I won't press the jurisdictional issue before this panel, but the Board's procedural failings compel remand under two bedrock principles of agency law. The first is that agencies act arbitrarily when they reject their own precedent without acknowledgment or explanation, and that's exactly what the Board did here by setting aside Sylva Trevino's knowledge of age requirement without any justification. Second, courts may not supply a reasoned basis that the agency itself never gave, and in fact, courts may not accept appellate counsel's post-hoc rationalizations. Well, that's we've said that in a number of cases, but isn't it so we've also said that if the answer to the question not resolved is so clear that it would be futile to remand, we can deal with it on that basis. We've had we've said that, haven't we? Yes, Your Honor, in narrow circumstances. So Banning v. Gomez. One question is, is this the kind of case where it's so obvious what they would say if we sent it back that it would be futile to send it back? It is not, Your Honor. And I think the contrast to the issue that you want back, that has it's the age issue, right? Well, the question is what definition of moral turpitude the Board is actually applying. And that turns on age, doesn't it? Well, that is actually the question that we submit the Board has to resolve in the first instance on remand. So we have the statute that he put that is involved covers a young woman 10 or under, right? Under 11, which means 10 or under. Yes. Right? That's the crime. Yes. All right. And the question is, did he, did this crime involve a person of the age of consent under New York law, right? Well, no, Your Honor. So going by what the Board did here, the Board's decision below said that the question as to scienter is whether this crime categorically required the pursuit of sexual gratification. That is the sole definition. But whether he knew or should have known that there was a violation. The Board did not say that in this case, and that is the critical procedural error. I understand. I'm past that. I'm past what they said. I'm beyond, I'm down to the point of what we can assume they would say if we sent it back because it's so obvious. Well, respectfully, Your Honor. You don't want to talk about that because you're saying we shouldn't send it back. But if we sent it back, the question is, is it futile to send it back? Well, so first of all, we are arguing that you should send it back. And that's precisely because what we need here, if the Board is going to depart from that knowledge of age requirement that you are correctly saying, Silva-Trevino imposed, which is what the Board did here unmistakably. It departed from that rule. If we send it back and they say, and the I.J. says, I find it beyond any dispute that a person looking at a 17-year-old girl would not think she's 10 or below, isn't that the end of the case? Well, that would be an issue for the next appeal in this case. That would be what? That would be an issue for the next appeal in this case. Well, maybe you'd appeal it, but isn't that what the I.J. would say? No reasonable person could think a 17-year-old girl is less than 11. I don't know how the I.J. You don't think they would say that? I don't know what rule, what definition of moral turpitude they would choose to apply. Can you imagine anyone thinking a 17-year-old girl, a 10-year-old girl is 17? Well, again, Your Honor, that issue simply is not relevant on this appeal. I know you say that because you are fighting not to – you are fighting to have a remand, and so I'm going with you to your next step to find out if your next step is worth taking. And if nobody in the – no rational person or no reasonable person could think that a 10-year-old girl was 17, then it's futile to send it back, isn't it? Okay. So I don't mean to keep dodging, and I will get to the merits in one second, but I just would be a question on remand, is what definition, what test for scienter and, more broadly, for moral turpitude the Board is actually going to elect to apply? Why is it worth remanding? Actually, one of the victims was 7, is that right? Those are the facts of this particular case, yes. Now, what is the purpose of remanding? The purpose for a remand – Given those facts. Yes, Your Honor. So the purpose is at bottom to enforce basic separation of powers principles that require the agency to answer this question in the first instance. And it is not the question that Judge Newman is ultimately posing, although that is another thing that will come up on remand. But even if the answer is obvious? But the antecedent question that needs to be answered is what definition of moral turpitude is the Board applying?  The answer is a delegation to the Board to exercise its authority as an agency to interpret. Once we have the answer to that, the answer may be what Judge Newman is imagining, which is that they will revert to some form of the Silva-Trevino knowledge-of-age requirement, and then we'll see how they apply it, and then there will be the entire merits issue there. In the opinion of the BIA, they did cite this purpose of sexual gratification issue, but in the very next sentence, they cite the matter of Jimenez-Cedillo, which dealt with this precise issue that Judge Newman is identifying, where the age would be so obvious that it you should have known. So by citing that case, aren't they essentially adopting the reasoning of that case? Well, they are not. And two answers to that. First of all, they have a very long parenthetical where they describe the holding. So why isn't that some indication that they agree with the reasoning of that case? And that's a second reason for their decision. So the ultimate problem there is that even if you generously read that citation to import the Sienter analysis from Jimenez-Cedillo, even though, as you'll note, it's actually cited only for reprehensibility, the other prong, but even assuming this is relevant to Sienter, Jimenez-Cedillo categorically did not endorse the idea that knowledge-of-age was somehow inherent in the offenses at issue there. It said just the opposite. And so if you start at page four of that decision, the premise of the analysis was that a defendant, quote, can be convicted under sections 3307A345, those are the ones parallel to ours here, even if there was a reasonable mistake as to the victim's age, and then there's a cite to this Moore case. So the premise was these were offenses that could not meet Silva-Trevino's knowledge-of-age requirement. And the board immediately went on to say it had yet to decide whether there might be a different alternative definition of moral turpitude that could cover those offenses. Now, that was the one that was remanded anyway, right? It was remanded precisely because that was a mistaken reading of Silva-Trevino. There was, in fact, no gap to fill. Silva-Trevino had said knowledge-of-age is the required Sienter. But the point here, to answer Judge Bianco's question, is that Jimenez-Cedillo, as arbitrary as it was, was even by its own terms not a decision applying the knowledge-of-age requirement and finding that offenses implicitly satisfied it. It was a case that developed an alternative definition of moral turpitude that was a strict liability definition. You can see that on the next page of that decision. They rely on Third Circuit law to say sometimes you can just say with morality offenses, strict liability is enough. And ultimately, at six, it says we are now applying this new rule where Sienter is simply implicitly satisfied without attention to knowledge-of-age. And if you look at the parenthetical in the board's decision here, that is exactly the case, arguably. The government says that in Silva-Trevino, the board said it is enough that a defendant should have known the victim was a child without the capacity to consent. That is absolutely — Do you disagree with that? I do not disagree with that. But the — You do not disagree with that? I do not disagree with that. Constructive knowledge is part of the whole — Well, if the person should have known, then isn't this a case where no reasonable person could fail to find that they should have known? I would — I would respectfully take issue, but — but ultimately, what's dispositive here is that that merits question is simply not ripe yet for this panel. It's not ripe because we have — Well, that's just another way of saying you don't believe in the futility doctrine, that everything must be — that we must give them a chance even if it's futile. I see I'm over my time. May I just answer that question? When you — when you — well, go ahead. Finish your thought. I would just — I would just say one more time that the — that really, the question that needs remand and a question that is certainly not futile and a question that is uniquely within the agency's competence to answer is how it is going to construe and apply that language, moral turpitude, in this case. What standard applies here? We have an unexplained, unacknowledged, arbitrary departure from its own precedent on that issue, and that is why we need a remand. And that is not an issue that this Court could decide so clearly now that a remand is futile. It's an issue that the Board must resolve in the first instance. You don't think they've said that if a person should have known the victim was below the age of consent, that is a crime of moral turpitude? They said that in Silva-Trevino, and they categorically said the opposite in this case and without explanation. And so that is the problem, and that's why we need a remand. Thank you. We'll hear from the government. You have some rebuttal. Good morning, Your Honors. May it please the Court, Rebecca Nahas for the United States Attorney General. The Court should affirm the agency's finding that petitioner's convictions for first-degree sexual abuse of a minor is a crime involving moral turpitude for three independently dispositive reasons. The first is that first-degree sexual abuse in New York satisfies the generic definition set out in Silva-Trevino 1. The AG in that case said that in order to be a crime involving moral turpitude, the offender knew or should have known that the victim was a child. The statute before us absolutely satisfies that standard because in every case, the state must prove that the victim is under 11. And there's absolutely no mistaking a child under 11 for an adult. And so it satisfies— Your adversary's main argument is, and that may all be true, but your adversary's main argument is that the BIA never relied upon that reasoning, that their reasoning related to the mental state regarding a purpose being sexual gratification, which the statute in Silva-Trevino also had in it, and yet that wasn't the basis for the ruling in Silva-Trevino. So why shouldn't this be remanded for them to explain this point that you're trying to make? So, Your Honor, I think the response is the one that Judge Newman provided, that remand would be absolutely futile because the conclusion is so obvious that this is a crime involving moral turpitude, even within that initial Silva-Trevino knowledge standard. This Court's futility doctrine is pretty strong, and I will cite Banega-Gomez. It's a case that I cited in my 28-J for the Pereira issue. But in that case, the Court applied the futility doctrine where the agency had found that the crime before it was a crime of violence under 16b, which is now invalidated under Supreme Court precedent. And the Court went on to reach the issue that the crime before it was a crime of violence under 16a, an issue the agency hadn't even touched on. And the Court said, we don't need to engage in a ping-pong match with the agency and send it back when we know. Do you think the Fourth Circuit then was wrong to remand Jimenez-Cedillo? They remanded it for precisely this reason, right? I know that that involved a 14-year-old as opposed to an 11-year-old, but is that really what the case is coming down to? I think that's an important distinction, Your Honor. I think crimes involving such very young children are per se satisfy the should-have-known requirements. So we don't need Jimenez-Cedillo. We don't need the Court to opine on whether that was a change in the law. We are relying on matter of silva trivino, the AG standard, and the should-have-knowns. Has that reasoning been articulated in a decision that hasn't been vacated? Not that I'm aware of, Your Honor. Why shouldn't we? I mean, we also have case law that says we may not supply a reasoned basis for the agency's decision that the agency did not give. So why shouldn't we send it back and let the agency say what might be obvious, but at least to let it say that? Well, Your Honor, I believe that the case law shows us that the Court is hesitant to reach issues that are within the agency's discretion. But this isn't an issue. We're not asking the Court to supply the generic definition of crime involving moral turpitude. The Attorney General already did that in matter of silva trivino. The agency relied heavily on Jimenez, and now Jimenez has been vacated. Shouldn't we let the agency take another look at it without relying on Jimenez? Well, Your Honor, I think it's a foregone conclusion. And just to finish my thought, this isn't an instance where we're asking the Court to step in for the Board and define an ambiguous term. All we're asking the Court to do is apply the New York statute, which the agency doesn't have, doesn't get deference for. You want us to hold that when you are talking about under the age of 11, it is so obvious that it is a crime involving moral turpitude? Well, a little bit more nuanced than that, but that it satisfies the matter of silva trivino should have known standards. So we're not applying a new rule. We're applying the old rule, and we're asking the Court to interpret the state statute, which is within this Court's purview, to find that it implicitly satisfies that should have known standards. You're saying we're interpreting the state statute, but aren't we really interpreting what crime involving moral turpitude means? Isn't that an agency decision? We're not interpreting the statute. We're interpreting the definition of a crime involving moral turpitude. So to be clear, the agency does get discretion in defining crime involving moral turpitude. I'm just arguing that the AG already did that in silva trivino one, and he said that it needs to be such that the offender knew or should have known. And all the government is asking is to find that the element in the New York statute that the victim be under 11 implicitly satisfies that generic definition, which is already there. The argument in interpreting the crime of moral turpitude term that there's a vagueness issue couldn't, on remand, that be one of the arguments that presented to the BIA, even though the BIA can't decide constitutional issues, they can consider vagueness in determining whether or not it should be within the definition of a crime involving moral turpitude. Why isn't that a potential issue independent of the statute itself? Well, Your Honor, I think it's because matter of silva trivino set out that definition, and petitioner is actually arguing that that should be the definition. And so what we're asking the court to do is to find that the state statute satisfies it, not to redefine crime involving moral turpitude. We're just applying the definition that the AG supplied. But alternatively, if the court wants to go to the Jimenez-Cedillo issue, we would argue — well, sorry, before I get there, I noted that there are three independently dispositive reasons that the government should prevail. I mentioned that we should prevail on the should-have-known requirement. We should also prevail on another ground, which is that the board has longstanding precedent that states that any statute that has an element of non-consent is a crime involving moral turpitude. And that precedent has been longstanding since the 1950s. Jimenez-Cedillo recently affirmed that finding, and the New York statute before the court is unique in that it includes on its face an element of non-consent. Unlike some of the other sex crimes against children where the non-consent isn't an element, but rather it's a crime by virtue of the child's inability to consent. Roberts. Isn't that potentially another reason to remand it? Because we don't know what the BIA is going to pick, the lack of consent argument that you're making, which has some compelling aspects to it, or the should-have-known age they could pick either, right? Well, I think arguably it shows how obvious this decision is, how unnecessary it is to send it back. It would just be a formality for the board to fill in analysis that is so obvious. I know they could be establishing precedent for future cases by picking one of those two theories. If they pick the lack of consent theory, you know, that would say something to future cases as opposed to the should-have-known argument that you're also making. Isn't that — wouldn't that be helpful? Well, we have Jimenez-Cedillo, which applies this lack of consent precedent. And in fact, the Fourth Circuit didn't touch that part of Jimenez-Cedillo. It wasn't before the court. So that part of the decision remains good law, even in the Fourth Circuit and certainly in this circuit. But let me get to the Jimenez-Cedillo issue. It was not a new rule. Arguably, Silva-Trevino was defining a different class of offenses. Yes, a lot of the elements were similar between the Texas statute and Silva-Trevino and the But the one really significant difference is the age of the victim. The age of the victim here is under 11. That is a prepupescent child that is a completely different universe of crimes than Silva-Trevino, which is an older child under 17. And so when the AG was defining crime involving moral turpitude in Silva-Trevino, it was defining it in that class of offenses involving older children. So Jimenez-Cedillo stepped in and filled the void that Silva-Trevino left and defined crime involving moral turpitude with respect to very young children. And in fact, the AG's reasoning in Silva-Trevino supports this conclusion. The AG said, look, we don't want to sweep in innocent conduct and deem morally turpitudinous, sort of this morally, legally acceptable conduct of initiating sexual contact with someone the offender genuinely or reasonably believed was an adult. That's just not a concern in this universe of offenses involving very young children because, again, there's no mistaking a child under 11 for an adult. Are you from the Office of Immigration and Litigation? I am. Well, it would be helpful if that office, when they're defending an appeal to the BIA, would make the arguments you're making now and save everybody, including your office, a lot of trouble. You resist the appeal on other grounds there, and then you come here and say, well, here's this other reason which is so obvious. It may be obvious, but it's an example where that office just creates problems for itself and for the courts by not presenting its full hand to the BIA and trying to get it affirmed on the right ground. Just to clarify, Your Honor, it's the Department of Homeland Security that represents the government below before the immigration judge and the Board of Immigration Appeals. And I'm not—your point is well taken, Your Honor. Thank you. Thank you. We'll hear the rebuttal. Just a couple points on Jimenez-Cedillo to clean up. First of all, this late-breaking consent theory is also not part of Jimenez-Cedillo, and it certainly was not imported here. There is brief mention of consent in Jimenez-Cedillo. It's about a different category of offenses that require either a victim who's known to be incapacitated or abuse of physical force, but when that decision turned to the offenses that are parallel to those here that simply require a young victim, no mention of consent, and again, this strict liability theory drawn from that Third Circuit case. Second point, Silva-Trevino's knowledge-of-age rule is absolute. There is no exception for a particularly young victim. That's exactly why the Fourth Circuit held that the board's decision in Jimenez-Cedillo was an unexplained departure from Silva-Trevino and remanded. There was no gap to fill, as the government is now suggesting. And a final point, there was a line here that choosing the meaning of moral turpitude on remand is a mere formality, and we would say that it is absolutely not. It's a core function of the board's decision-making to decide which of these various definitions now floating around in the ether it's actually going to apply, and as clear as it may feel that particular choices might lead to particular outcomes, the core decision has yet to be made, the core decision of which of those rules actually applies, and that's a decision for the board on remand. Thank you very much. We'll reserve the session.